OPINION OF THE COURT
Alexander, J.
Appellant Johnston was convicted after a jury trial in Harris County, Texas, of involuntary manslaughter in the first degree, a felony offense (Texas Penal Code § 19.05 [a] [2]). By reason of this conviction and pursuant to Judiciary Law § 90 *405 (4) (b) and (e), the Appellate Division, upon application of the Departmental Disciplinary Committee, ordered her name stricken from the roll of attorneys. Leave to appeal to this court was granted by the Appellate Division.
I
Judiciary Law § 90 (4) presently provides for the automatic disbarment of an attorney convicted of a "felony”, which is defined as any criminal offense classified as a felony under New York law or "any criminal offense committed in any other state, district, or territory of the United States and classified as a felony therein which if committed within this state, would constitute a felony in this state” (Judiciary Law § 90 [4] [e]). A felony committed in another State which would not be classified as a felony in New York is a "serious crime” (Judiciary Law § 90 [4] [d]) and subjects an attorney so convicted to temporary suspension (Judiciary Law § 90 [4] [f]) and ultimately, after a hearing, to a final order of suspension, censure or removal from office (Judiciary Law § 90 [4] [g]).
The statute’s present provision for automatic disbarment only upon conviction of a foreign felony which would also constitute a felony in this State is the result of an amendment to the statute enacted in 1979 (L 1979, ch 674, § 1). Prior to its amendment, Judiciary Law §90 (4) provided for automatic disbarment upon an attorney’s conviction of a "felony”, which was not further defined by the statute. Construing the prior statute, we held that the conviction of any Federal felony was sufficient to compel automatic disbarment, even though "there [may be] no felony analogue under our State statutes matching the Federal felony.” (Matter of Thies, 45 NY2d 865, 866 [opn Per Curiam].) The dissenters in Thies criticized the rule as unduly harsh and an unwarranted extension of the law of automatic disbarment (45 NY2d, at 867 [Wachtler, Fuchsberg, and Cooke, JJ., dissenting]; see, Matter of Donegan, 282 NY 285, 292). In Matter of Chu (42 NY2d 490, 494) we had also upheld automatic disbarment for conviction of a Federal felony, but noted the existence of a New York felony "of substantially the same elements.” The Legislature amended the statute in response to our decisions in Chu and Thies, moved by a concern that conviction of a relatively minor offense denominated a felony in another jurisdiction but with no New York analogue would be "sufficient cause” for automatic disbarment (Governor’s Mem of approval, L 1979, ch *406 674, 1979 McKinney’s Session Laws of NY, at 1822; see also, Matter of Margiotta, 60 NY2d 147, 150, n 1).
On the two occasions we have had since the amendment to consider its reach and effect, we have observed that "the felony in the other jurisdiction need not be a mirror image of the New York felony, precisely corresponding in every detail * * * though it must have essential similarity.” (Matter of Cahn, 52 NY2d 479, 482, citing Matter of Chu, 42 NY2d, at 492, supra; see also, Matter of Margiotta, 60 NY2d, at 150, supra.) In Margiotta, we held that a conviction of extortion under the Hobbs Act (18 USC § 1951 [b] [2]) was essentially similar to the New York felony of larceny by extortion (Penal Law § 155.05 [2] [e] [viii]). We concluded that the elements of both statutes were essentially the same even though the New York statute required proof of conduct instilling fear in the victim and the Federal felony could be committed upon a showing that the defendant acted under color of State law, reasoning that the Federal statute reflected the common-law rule that "the element of fear is implicit when extortion is accomplished by one acting under color of [State] law.” (Matter of Margiotta, 60 NY2d, at 151, supra.) Thus, as in Matter of Chu (supra), the elements of the crimes were substantially the same.
Relying on these precedents, petitioner, the Departmental Disciplinary Committee, contends that the Texas felony of involuntary manslaughter, as defined in Texas Penal Code § 19.05 (a) (2), is essentially similar to the New York felony of vehicular manslaughter, defined in New York Penal Law § 125.12. The Appellate Division agreed and ordered appellant’s automatic disbarment.
On this appeal, appellant contends that the Texas and New York felonies are dissimilar in two significant respects — the level of intoxication necessary to commit the crime and the culpable mental state required. We agree, and for the reasons that follow, reverse the order of the Appellate Division.
II
Our analysis must begin with an examination of the Texas and New York statutes. In defining the third degree felony of involuntary manslaughter, Texas Penal Code § 19.05 provides:
"(a) A person commits an offense if he:
"(1) recklessly causes the death of an individual; or
"(2) by accident or mistake when operating a motor vehicle *407 * * * while intoxicated and, by reason of such intoxication, causes the death of an individual.”
"Intoxication” is defined to mean "that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body” (Texas Penal Code § 19.05 [b]).
The Texas Court of Criminal Appeals has held that to establish involuntary manslaughter under section 19.05 (a) (2), the State must prove only that the defendant operated a motor vehicle while intoxicated and, by "accident or mistake” caused the death of that individual by reason of that intoxication (Daniel v State, 577 SW2d 231, 233). The words "accident or mistake” have been construed by the court to mean "unintentional” (id.), and the offense may be established without proof of any culpable mental state (Ex Parte Ross, 522 SW2d 214, 218). Although Ormsby v State (600 SW2d 782, 783) held that criminally negligent homicide (Texas Penal Code § 19.07 [a]) is a lesser included offense of involuntary manslaughter as defined in Texas Penal Code § 19.05 (a) (2), this is because the conduct of driving while intoxicated and causing a death thereby is, under Texas law, recklessness per se (Guerrero v State, 605 SW2d 262, 264; see also, Searcy & Patterson, 1973 Practice Commentary, Vernon’s Texas Penal Code Annot § 19.05, at 110 [1989]). There is no requirement under section 19.05 (a) (2) that any culpable mental state be alleged or proven (Guerrero v State, 605 SW2d, at 264, supra).
And while Texas requires proof that the death was caused by the actor’s intoxication (Daniel v State, 577 SW2d, at 233, supra), the proof of intoxication need show no more than "that the actor does not have the normal use of [] mental or physical faculties by reason of the voluntary introduction of any substance into his body” (Lockhart v State, 108 Tex Crim 597, 1 SW2d 894, 895). Where the actor suffers such a loss of the normal use of mental or physical faculties "to any degree”, intoxication is established under Texas law (id.; Parr v State, 575 SW2d 522; Texas Criminal Practice Guide § 124.04 [2], at 124-18.1 [Teague & Helft 1989]).*
The New York statute found by the Appellate Division to be *408 "essentially similar” to the Texas statute is Penal Law § 125.12, which defines second degree vehicular manslaughter as follows:
"A person is guilty of vehicular manslaughter in the second degree when he:
"(1) commits the crime of criminally negligent homicide as defined in section 125.10, and
"(2) causes the death of such other person by operation of a vehicle in violation of [Vehicle and Traffic Law § 1192 (2), (3) or (4)] * * * Vehicular manslaughter in the second degree is a class D felony.”
Criminally negligent homicide is committed when "with criminal negligence, [one] causes the death of another person” (Penal Law § 125.10). One acts with criminal negligence "with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation” (Penal Law § 15.05 [4]). Subdivisions (2), (3) and (4) of Vehicle and Traffic Law § 1192 prohibit the operation of a motor vehicle by any person having a blood alcohol level of .10% or more (subd [2]), being in "an intoxicated condition” (subd [3]), or while his ability is "impaired by the use of a drug” (subd [4]). Vehicle and Traffic Law § 1192 (1), the violation of which is not sufficient to support a conviction for vehicular manslaughter, proscribes the operation of a motor vehicle while one’s ability is "impaired by the consumption of alcohol”.
The Appellate Division reasoned that the Texas and New York statutes were "essentially similar” both as to the necessary level of intoxication and the proof of a culpable mental state. We disagree.
Unlike the Texas statute as it existed at the time of the offense here, the New York Legislature has differentiated between separable offenses based upon the degree of impairment caused by alcohol ingestion (see, Vehicle and Traffic Law § 1192 [1], [2], [3]; People v Farmer, 36 NY2d 386, 390). We have held that impairment under subdivision (1) means that the actor "by voluntarily consuming alcohol * * * has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle *409 as a responsible and prudent driver.” (People v Cruz, 48 NY2d 419, 427 [emphasis added].) The standard for determining intoxication is whether the consumption of alcohol has rendered him or her incapable of performing various mental or physical acts which an average person would be able to do (id.). Intoxication, as necessary to establish a violation of Vehicle and Traffic Law § 1192 (2) or (3), "is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a motor vehicle as a reasonable and prudent driver.” (Id., at 428; see also, People v Ottomanelli, 107 AD2d 212 [Titone, J. P., participating]; People v Bradford, 96 Misc 2d 298, 300; People v Miller, 83 Misc 2d 118, 119.)
Thus, the New York standard for determining "intoxication” is significantly higher than the standard in Texas. Indeed, the Texas standard, requiring proof of intoxication "to any degree” (Lockhart v State, 1 SW2d, at 895, supra) more nearly approximates the New York standard for impairment by reason of alcohol consumption pursuant to Vehicle and Traffic Law § 1192 (1), a level of impairment which is not sufficient under New York law to support a felony conviction for vehicular manslaughter. Moreover, the Texas statute focuses entirely upon the subjective tolerance of the individual in determining intoxication. The New York test, by contrast, is objective and measures the actor’s ability to employ physical and mental faculties against that of a reasonable prudent driver. We conclude therefore, that the elements of intoxication in the Texas and New York felonies are not "essentially similar”. Indeed, conduct which would not be a felony in New York — causing a death by operating a motor vehicle while "impaired” by the consumption of alcohol — would constitute a felony under the Texas statute which appellant has violated.
The Texas and New York felonies also differ significantly as to the culpable mental state required. No proof of a culpable mental state is required to establish the Texas felony of involuntary manslaughter; rather, proof that the actor’s intoxication caused a death constitutes recklessness as a matter of law (Guerrero v State, 605 SW2d, at 264, supra). A conviction for vehicular manslaughter in New York requires proof that the actor’s intoxication caused a death and that the actor acted with criminal negligence (see, Penal Law § 125.12). It has long been the rule in this State that proof of intoxication *410 alone is insufficient to establish criminal negligence and that the People must also show that the "intoxication affected [the defendant’s] physical and mental capacity to the extent that it caused him to operate his vehicle in a culpably reckless manner” (People v Bast, 19 NY2d 813, 815).
Thus we conclude that while both the Texas and the New York statutes are directed at the evil of drunken driving, the elements of the statutes and the proof required thereunder are not essentially similar. Automatic disbarment, therefore, is unwarranted.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that court for such further proceedings as may be appropriate.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs, and matter remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.

 In 1987, after the date of the incident underlying appellant’s conviction, the Texas statute was amended to define intoxication as not having the normal use of one’s mental or physical faculties or having a blood alcohol concentration of .10% or more. No blood alcohol test was administered to appellant in this case.