### In the Matter of Drew V. TIDWELL, Respondent.

No. 00–MC–6013L.

United States District Court, W.D. New York.

Dec. 21, 2000.

Drew V. Tidwell, Amherst, NY, Movant.

## DECISION AND ORDER

LARIMER, Chief Judge.

On October 22, 1999, I entered an order, in my role as Chief Judge, striking Drew V. Tidwell ("Tidwell") from the roll of attorneys authorized to practice before the federal courts in the Western District of New York. That order, premised on Local Rule 83.3, was entered based on notification from the Appellate Division of the Supreme Court, Fourth Department, that Tidwell had been disbarred from practice in New York.[1] The Fourth Department order, entered September 17, 1999, indicated that Tidwell had been disbarred following a felony conviction.

By motion filed August 18, 2000, Tidwell moved to vacate this Court's order of disbarment. Tidwell brings this motion pursuant to Federal Rule of Civil Procedure 60. Tidwell's motion to vacate is in all respects denied.

## DISCUSSION

There are several reasons, both procedural and substantive, as to why the motion to vacate should be denied. The order at issue here was a final order, and there is no question that Tidwell received prompt notification of its entry. Tidwell now claims that this Court committed legal error, and therefore, the order should be vacated. The reasons advanced by Tidwell are certainly not newly discovered and could have been put forth in an appeal to the Second Circuit from this Court's order of disbarment. It is clear that Rule 60 should not be utilized as a substitute for appeal nor as a vehicle to circumvent any default concerning appellate rights. *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *Winnik v. Chater*, 1998 WL 151041, at *2 (S.D.N.Y. Apr. 1, 1998). Tidwell elected not to prosecute an appeal before the Second Circuit, and for that reason alone, I believe that the pending Rule 60 motion should be denied.

Tidwell attempts to explain his failure to appeal by suggesting that the efforts of both his wife and son to file an appeal on his behalf were rebuffed by personnel at the Second Circuit. Allegedly, they were told that this Court's order was

---

1. Local Rule 83.3(b) provides for the imposition of reciprocal discipline: "Any attorney who has been disbarred from the bar of a state in which he or she was admitted to

not reviewable because no hearing was held. There is no documentation from the Second Circuit to support those self-serving assertions. In any event, Tidwell practiced law for over twenty years and was admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the District of Columbia, the Fifth and the Sixth Circuits. It is incomprehensible that an experienced attorney would accept such an explanation, given verbally by ministerial employees, without making any formal inquiry or seeking written confirmation.

I also do not believe that Tidwell has advanced sufficient reasons under Rule 60 to justify the relief he seeks. Rule 60(b) provides that a court may relieve a party from a final judgment for certain specific enumerated reasons. Those reasons include:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

■ Tidwell seeks relief under sections (1) and (4). First, Tidwell claims that the Court erred as a matter of law in entering the judgment of disbarment. Although

some courts have recognized that legal error may be considered a "mistake" correctable under Rule 60(b)(1), there is a rather rigid time frame for seeking such relief. In the Second Circuit, such motions must be filed before the time allowed to appeal the disputed judgment has lapsed, in this case thirty (30) days. *See In re Texlon,* 596 F.2d 1092, 1100 (2d Cir.1979); *International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977).

■ Tidwell's motion to vacate was not filed until August 18, 2000, approximately ten months after entry of the disputed order. The reasons advanced by Tidwell for this delay are insubstantial and do not warrant special consideration. The fact that Tidwell was incarcerated during some of this period and claims to have been under some distress is not a sufficient reason to excuse the lengthy delay here.[2] Tidwell was an experienced lawyer and certainly had the knowledge and ability to file papers while incarcerated. This Court receives numerous filings from incarcerated individuals on an almost daily basis. Moreover, Tidwell participated in disbarment proceedings in both the District of Columbia and Virginia during the term of his incarceration.

■ Second, Tidwell claims that the Court's order must be vacated because it is lacking in due process, and thus void under Rule 60(b)(4). *See, e.g. Beller & Keller v. Tyler,* 120 F.3d 21, 23 (2d Cir.1997)(Judgment may be void if court "acted in a manner inconsistent with due process of law.") (citations omitted). In essence, Tidwell challenges this Court's practice of exercising reciprocal discipline

---

practice shall have his or her name stricken from the roll of attorneys of this Court...."

**2.** The record suggests that Tidwell was not incarcerated during this entire period. This Court's order was issued on October 22,

1999. Although Tidwell pleaded guilty in state court on September 3, 1999, he was not sentenced until November 17, 1999. It appears that Tidwell had been released on bail pending sentencing. *See* September 3, 1999 Plea Transcript, p. 11.

based on proceedings in the state courts, especially the New York state courts. This Court has found no other example of a disbarment order that was vacated pursuant to Rule 60(b)(4). However, in turning to the merits of this claim, the Court is not convinced that, under the circumstances of this case, its decision to exercise reciprocal discipline was improper.

■ A federal court should give effect to a state court's imposition of discipline unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear:

1. That the state procedure, from want of notice or opportunity to be heard, was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 61 L.Ed. 585 (1917); *see also In re Edelstein*, 214 F.3d 127, 131 (2d Cir. 2000).

Tidwell argues, in part, that it is improper for this Court to impose reciprocal discipline because New York's automatic disbarment procedures are defective and lack

due process. There are, however, several problems with Tidwell's arguments concerning the process relating to his disbarment.

Tidwell pleaded guilty to a Class E Felony on September 3, 1999, before a Justice of the Supreme Court in Erie County, New York. Tidwell admitted to the charge of leaving the scene of an incident without reporting, as part of a plea bargain. In that case, a vehicle driven by Tidwell struck a cyclist, who died of his injuries. The record reflects that Tidwell accepted a jail term of one year. In addition, as part of the plea colloquy, the prosecutor specifically put on the record the fact that Tidwell, because of the conviction, would lose his license to practice law.[3] Neither Tidwell nor his attorney contested that assertion. Disbarment was mandatory because New York Judiciary Law § 90(4) provides for automatic disbarment of an attorney convicted of a New York felony. There is no dispute that all the parties understood that Tidwell would be disbarred as a result of the felony conviction. Following the entry of his plea, the Fourth Department issued its order disbarring Tidwell.

Here, and in other jurisdictions where his ability to practice is also being reviewed, Tidwell contends that the Fourth Department's order was issued without due process. Yet Tidwell made no such claim before the New York state courts when the disbarment order was entered. In fact, Tidwell promptly issued an "Affidavit of Compliance" with the Fourth Department's order on September 29, 1999. It seems clear that Tidwell's plea bargain (which might be considered lenient by

---

**3.** During the plea colloquy, the prosecutor stated: "As an understanding of this plea, it is the People's understanding that Defendant will receive a one-year sentence of imprisonment. He will waive his right to appeal that conviction, as well as waive his right to appeal the sentence. It's ... our further under-standing that he will surrender his license to practice law immediately ... upon his entering this plea. Further, that he will post a $10,000 bail pending his sentencing." September 3, 1999 Plea Transcript, p. 2–3. Neither Tidwell nor his attorney contested those statements at the time.

some) and agreed-upon sentence were based in part on the fact that Tidwell would lose his license to practice law. Neither Tidwell nor his experienced counsel raised any objection in the criminal proceedings to the representation that Tidwell would lose his license.

■ Furthermore, Tidwell took no action to challenge the Fourth Department's order of disbarment. Although, absent a substantial constitutional question, there is no automatic right to appeal the disbarment order, Tidwell could have petitioned the Court of Appeals for leave to appeal pursuant to New York Civil Practice Law and Rules § 5602. *See In the Matter of Johnston,* 75 N.Y.2d 403, 554 N.Y.S.2d 88, 553 N.E.2d 566 (1990)(Noting that Appellate Division had granted leave to appeal following attorney's disbarment pursuant

to section 90(4)); *see also Edelstein,* 214 F.3d at 131 n. 1. It is a fair assumption that Tidwell made no effort to challenge his New York disbarment because he knew and understood that as part of the plea bargain, he was to lose his law license.[4]

While it may well be that in certain situations, a federal court should not automatically enforce the disciplinary action of a state court where there is defective process or other challenge to the state proceedings, this is not such a case.[5] There is no dispute that Tidwell pleaded guilty to a felony and that such action, under New York law, mandates disbarment. Even now, Tidwell does not assert innocence and makes no contention that his plea and conviction were improper. In the voluminous papers submitted to this Court, Tidwell has advanced nothing to affect the

4. Moreover, although Tidwell sought to prevent the imposition of reciprocal discipline in jurisdictions outside the state of New York, namely Virginia and the District of Columbia, he did not challenge his disbarment in the Western District of New York until *after* he had completed his agreed-upon sentence.

5. Tidwell argues that a District of Columbia Court of Appeals decision, which reversed the application of reciprocal discipline to an attorney disbarred in the state of New York, requires this Court to likewise decline to impose reciprocal discipline. *See In re Thies,* 662 F.2d 771 (D.C.Cir.1980). Although the *Thies* court found that New York's procedures did not comport with the due process requirements articulated in *Selling,* this case can be distinguished on its facts. First, the seriousness of the felony which led to the attorney's disbarment was minimized by the court. Thies was convicted of assaulting a federal officer. The sentencing judge apparently characterized Thies's conduct as a "kindergarten shouting and pushing match." *Id.* at 772 n. 5. More importantly, the court was reviewing an earlier version of section 90(4). When Thies was disbarred, New York law was interpreted as providing for automatic disbarment upon conviction of *any* felony committed in *any* jurisdiction, regardless of whether the conduct would also constitute a felony under New York law. Thus, New York attor-

neys were at the mercy of another jurisdiction's characterization of felony conduct— conduct that may not have been envisioned by the New York Legislature. Although the New York Court of Appeals affirmed Thies's disbarment, the dissent decried this "inflexibly harsh rule" and noted that "[t]he aberrational results which today's determination will bring may now be avoided only by legislative action." *Matter of Thies,* 45 N.Y.2d 865, 867, 410 N.Y.S.2d 575, 382 N.E.2d 1351 (1978). In response, the New York Legislature amended the statute, "moved by a concern that conviction of a relatively minor offense denominated a felony in another jurisdiction but with no New York analogue would be 'sufficient cause' for automatic disbarment." *In the Matter of Johnston,* 75 N.Y.2d 403, 405, 554 N.Y.S.2d 88, 553 N.E.2d 566 (1990). New York law now provides for automatic disbarment only when an attorney is convicted of committing a felony under New York law or "any criminal offense committed in any other state, district, or territory of the United States and classified as a felony therein which if committed within this state, would constitute a felony in this state." N.Y. Jud. Law § 90(4)(e). There is no question that Tidwell's felony conviction was premised on New York law.

validity of his state court conviction. Under these circumstances, there is no reason why this Court should not discipline Tidwell based on the New York conviction. Thus, on the facts of this case, I find no lack of due process that warrants my granting relief under Rule 60.

Even if this Court were to vacate the order of disbarment, the fact remains that Tidwell is a convicted felon and not authorized to practice in New York. Since Tidwell has conceded the validity of his state felony conviction, it would be pointless to conduct further proceedings, and this Court has ample authority to impose reciprocal discipline. *See In re Thies*, 662 F.2d 771, 774 n. 15 (D.C.Cir.1980)(Once an attorney facing disbarment "conceded the fact of his conviction, a hearing might have been pointless.").

### CONCLUSION

Tidwell's motion to vacate this Court's order of disbarment entered October 22, 1999, is hereby denied.[6]

IT IS SO ORDERED.

---

**6.** In his most recent missive to this Court, Tidwell suggests that the Court is maintaining a "non-public" file comprised of materials from the Virginia and District of Columbia proceedings. Tidwell's initial application to this Court contained information that, although technically correct, was somewhat misleading. For example, Tidwell listed the dates he was admitted to practice before various courts, without indicating that disbarment proceedings had commenced in the majority of those jurisdictions. A simple electronic search by this Court revealed these omissions. This misunderstanding could have been avoided if Tidwell had been more forthcoming in his initial submissions to the Court.

In any event, Tidwell has now submitted what purports to be a complete record of all the disciplinary proceedings pending against him. This submission far surpasses the materials that the Court had received directly from these disciplinary bodies. In reaching its decision, the Court has not considered any materials that are not contained in the record on this motion.

The Court did receive several unsolicited letters from members of the public who expressed their views (mostly negative) on what they perceived to be Tidwell's application for re-admission to the bar. These letters have been docketed and are part of the record, but they formed no basis for this decision.