People v Ramirez (2025 NY Slip Op 51780(U))

[*1]

People v Ramirez

2025 NY Slip Op 51780(U)

Decided on November 12, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 12, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Jose A. Ramirez, Defendant.

Docket No. CR-009343-25BX

Defendant: Bronx Defenders by Alice Thompson, Esq. and Cristine Oh, Esq.
People: Bronx County District Attorney's Office by ADA Nikki Vlahos

Daniel M. Lewis, J.

On March 30, 2025, Defendant was arraigned on charges of Vehicle and Traffic Law §§ 1192 (2), 1192 (3), and 1192 (1). Defendant is alleged to have operated a motor vehicle on March 29, 2025, at approximately 5:24 p.m., in front of 211 East Tremont in the Bronx, while in an intoxicated condition as evidenced by a breathalyzer test showing above .08% blood alcohol content and while his ability was impaired by the consumption of alcohol. At arraignment, the People served CPL § 710.30 (1) (a) notice for a statement made on scene at 5:28 p.m. to Police Officer (PO) Anthony Ramirez. No subsequent CPL § 710.30 (1) (a) notices were filed within the 15-day statutory period.
On August 18, 2025, defense filed an omnibus motion requesting suppression of all observations of Defendant made by the police, any tangible evidence including an alleged open container of alcohol, all evidence relating to the chemical breath test taken by Defendant, and Defendant's statement. In the alternative, defense sought various hearings. On September 19, 2024, J. Samuel David granted Ingle, Dunaway, Mapp, Johnson, Huntley, Atkins, Odum, and CPL § 710.25 (5) hearings, but denied the request for a refusal hearing.
On November 3, 2025, the undersigned presided over the Ingle, Dunaway, Mapp, Huntley, Johnson, Huntley, Atkins and Odum hearings. Both the Court and defense agreed that a CPL § 710.25 (5) hearing was inapplicable. Defense's motion to preclude any non-noticed statements was deferred to the trial court. The People called one witness, PO Anthony Ford. Additionally, PO Ford's body-worn camera (BWC) footage and the video footage from the [*2]Intoxicated Driver Testing Unit (IDTU) were accepted into evidence without objection from defense.
Below constitutes the Court's decision on the findings of fact, and the conclusions of law from the Ingle, Dunaway, Mapp, Johnson, Huntley, Atkins and Odum hearings.
I. FINDINGS OF FACT
PO Anthony Ford
PO Ford testified to the following:
PO Ford has worked as an NYPD officer for almost two years and has been assigned to the 46th Precinct as a patrol officer since graduating from the Police Academy. He has made approximately 50 arrests and has assisted in approximately 150 arrests. He has arrested one person for driving while intoxicated and has assisted in one other such arrest. At the Police Academy, he was trained to recognize the signs of someone under the influence of alcohol. He has also observed others become intoxicated after consuming alcohol in his professional and personal experiences.
On March 29, 2025, at approximately 6:24 p.m., PO Ford was on duty, in uniform, and on foot as a patrol officer with his partner, PO Anthony Ramirez, standing in front of 211 East Tremont Avenue in the Bronx. PO Ford observed a man, who he identified as Defendant, in a gray Toyota Camry and parked in a bus stop. PO Ford then observed Defendant reverse his vehicle and heard the driver behind Defendant honk the horn in response. PO Ford also stated that Defendant nearly hit the other driver's car, and that Defendant jumped his vehicle up onto the curb, nearly striking a post of scaffolding.
In response, PO Ford approached the driver's side and observed Defendant seated in the driver's seat. There were no other occupants in the car. PO Ford spoke to Defendant and immediately noticed a Modelo beer bottle in the center console in plain view.
PO Ford stated that he did not threaten Defendant at any point during their interaction and that his weapon remained holstered. Additionally, PO Ford stated he did not make any promises to Defendant or guarantee him anything in exchange for making statements.
PO Ford asked Defendant in English if the beer bottle belonged to him. Defendant responded in English that the beer bottle did not belong to him, but to his wife, for whom he was waiting. No one else was present either in or around the vehicle. When Defendant spoke, PO Ford immediately smelled alcohol on his breath. PO Ford asked Defendant to step out of the vehicle, at which time he further observed that Defendant was swaying, his speech was slurred, and that he had bloodshot, red eyes.
PO Ramirez spoke to Defendant in Spanish, which PO Ford does not speak. PO Ramirez informed PO Ford of what he was saying to Defendant. When the officers asked Defendant for his identification, this conversation was conducted in Spanish because of the lack of English Defendant spoke. Defendant complied with the directions to provide his license, registration and proof of insurance. 
After a minute or two, Defendant was placed in handcuffs and under arrest. Based on PO Ford's professional and personal experiences along with his training, he believed that Defendant [*3]was drinking alcohol and driving due to Defendant's bloodshot eyes, slurred speech and the smell of alcohol on his breath. After Defendant was placed under arrest, PO Ford recovered the bottle of Modelo, which was empty, from the center console of Defendant's vehicle.
PO Ford brought Defendant to the 45th Precinct for IDTU testing and remained present during Defendant's IDTU test. At approximately 7:41 p.m., PO Jonathan Taborda, a highway patrol officer who specializes in IDTU, conducted a chemical test analysis of Defendant's breath. PO Taborda asked Defendant in English whether he consented to the breath test and then played a Spanish recording. After the recording, Defendant said "si" indicating "yes." Defendant blew into the Intoxilyzer machine, and a breath sample was taken. PO Taborda announced the results of the chemical test analysis of Defendant's breath as .114, which was over the legal limit of .08. Defendant was not offered any physical coordination test due to the language barrier.
BWC Footage of PO Ford
The Court reviewed the entirety of PO Ford's BWC and particularly notes the following:
• At 6:27 p.m., a gray vehicle is seen backing up in the driver's rightmost lane of traffic. • At 6:27 p.m., PO Ford approached the driver's side of vehicle, where Defendant was seated.
• At 6:28 p.m., PO Ford instructed Defendant to step out of the vehicle and Defendant complied. PO Ramirez asked Defendant in English for identification. Defendant reentered the vehicle and reached into the passenger seat. PO Ramirez held onto Defendant's arm during this time. PO Ford repeated his instruction for Defendant to step out of the vehicle and Defendant, in heavily accented speech, stated that he was getting his identification. Defendant stepped out of the vehicle and proceeded to look through a wallet while PO Ramirez held onto his arm.
• At 6:28 p.m., PO Ford said, "What's that? Cerveza right there? That's yours?" Defendant's response was mostly indecipherable due to his accent except for the words "my wife."
• At 6:28 p.m., PO Ford said, "Turn around," and proceeded to place Defendant in handcuffs.
• At 6:29 p.m., PO Ramirez conversed with Defendant in Spanish. PO Ramirez said to PO Ford, "So, he did admit that he was drinking at 4:00 p.m."
IDTU Video
The Court reviewed the entirety of the IDTU video and particularly notes the following:
•At 7:42 p.m., PO Taborda said, "I would like you to take a breath test. Are you willing to take the test, yes or no?" Before Defendant responded, PO Taborda immediately began to play a video in Spanish. Defendant responded, "Si." PO Taborda proceeded to play more of the video in Spanish.
•At 7:44 p.m., at the conclusion of the video, Defendant walked over to the Intoxilyzer machine and proceeded to blow into it. PO Taborda announced the results as .114.
II. CONCLUSIONS OF LAW
The Court finds PO Ford credible and that he testified from memory truthfully. Although PO Ford's testimony at times conflicted with his BWC footage, such inconsistencies are understandable given the passage of time between the event in question and the date of the [*4]testimony. These inconsistencies did not impact PO Ford's overall credibility, although the Court affords more weight to the contemporaneous record in the BWC footage and IDTU video.
Ingle/Dunaway
Police may stop a vehicle traveling on a public roadway for violations of the Vehicle and Traffic Law (People v Ingle, 36 NY2d 413, 414 [1975]). The validity of a traffic stop is evaluated by whether the officer had probable cause that the driver committed a traffic infraction (People v Hinshaw, 35 NY3d 427 [2020]). In People v DeBour (40 NY2d 210 [1976]), the Court of Appeals set forth a graduated four-level test to determine the lawfulness of police-initiated street encounters. Level two allows an officer the common law right to inquire to gain explanatory information when there is founded suspicion that criminal activity is afoot (id. at 223). A traffic violation may serve as a predicate for a warrantless arrest (People v Marsh, 20 NY2d 98, 101 [1967]).
An arrest without a warrant is presumed to be illegal (Broughton v State, 37 NY2d 451, 458 [1975] ["Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful"]). Under DeBour, an arrest is authorized when an officer has probable cause to believe that a crime has been committed (People v Hollman, 79 NY2d 181, 185 [1992]). When defense challenges the validity of the warrantless arrest in a suppression hearing, the People have "the burden of coming forward with evidence showing that there was probable cause for the arrest" (People v Parris, 83 NY2d 342, 346 [1994]). "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court" (Mapp v Ohio, 367 U.S. 643, 654 [1961]; see also Dunaway v New York, 44 U.S. 200 [1979]). An officer's subjective beliefs play no role in the Court's analysis of whether probable cause existed for the arrest (Devenpeck v Alford, 543 U.S. 146, 594 [2004] ["(an officer's) subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"]).
For a Dunaway hearing in the context of Vehicle and Traffic Law § 1192, "[t]he standard to be followed is that it is more probable than not that defendant is actually impaired" (People v Vandover, 20 NY3d 235, 239 [2012]. For a Vehicle and Traffic Law § 1192 (1) offense, "driving a motor vehicle while there is any alcoholic impairment of the driver's 'ability to operate such vehicle' would constitute a violation" (People v Cruz, 48 NY2d 419, 426 [1979]).
For a Vehicle and Traffic Law § 1192 (2) or (3) offense, "[t]he standard for determining intoxication is whether the consumption of alcohol has rendered [the defendant] incapable of performing the various mental or physical acts which an average person would be able to do" (Matter of Johnston, 75 NY2d 403, 409 [1990], referencing Cruz at 426). "Intoxication . . . 'is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a motor vehicle as a reasonable and prudent driver'" (id., citing Cruz at 428). Indicia of intoxication frequently include the subject's physical appearance, conduct and demeanor, responsiveness, speech patterns, coordination and balance, an odor of alcohol on the subject's breath, the presence of alcohol in the vehicle or on the subject's person, and any admission from the subject regarding consumption of alcohol. However, the ultimate question of whether the extant indicia rise to the level of probable cause is a "mixed question of law and fact" (Vandover at 237).
In the instant matter, PO Ford testified that Defendant's car was initially parked in a bus [*5]lane. Then, PO Ford observed the car drive backwards, almost striking another vehicle behind his and causing the driver of the vehicle behind to honk his horn. Shortly thereafter, PO Ford observed the car jump the curb and almost strike a scaffolding pole. When PO Ford approached, he saw that Defendant was the only occupant in the vehicle and seated in the driver's seat. Thus, PO Ford had probable cause to stop Defendant's vehicle for his operation of that vehicle in violation of the Vehicle and Traffic Law. Moreover, Defendant's conduct provided PO Ford with a common law right of inquiry under De Bour.
Upon further approach, PO Ford saw a beer bottle in the center console. After the officers instructed Defendant to step out of the car, PO Ford stated he detected the smell of alcohol on Defendant's breath and observed that Defendant was swaying, his speech was slurred, and he head bloodshot, red eyes. Shortly thereafter, PO Ford placed Defendant in handcuffs. Although PO Ford did not explicitly testify that Defendant was impaired or intoxicated, an officer's subjective beliefs regarding Defendant's condition is not dispositive. Instead, whether probable cause exists to conclude that Defendant's ability to operate a motor vehicle was impaired by the consumption of alcohol; operated a motor vehicle in an intoxicated condition; or operated a motor with a BAC above .08% is a legal conclusion for the Court to determine based on the evidence adduced during the hearing. Given that Defendant was parked in a bus lane, began to drive erratically, had bloodshot, red eyes, the smell of alcohol detected on his breath, and the existence of an empty Modelo beer bottle inside his vehicle, it is more probable than not that Defendant operated the motor vehicle in question while his ability to do so was impaired by alcohol and in an intoxicated condition.
For the foregoing reasons, the defense's motion to invalidate Defendant's arrest because it lacked probable cause is DENIED.
Mapp/Johnson
Defense also moves to suppress all observations of Defendant made by the police, any tangible evidence including an alleged open container of alcohol and all evidence relating to the chemical breath test, arguing that police lacked probable cause.
In a Mapp hearing, the People have the initial burden of showing that there was probable cause to arrest the defendant. The burden then shifts to Defendant to prove by a preponderance of the evidence that the police acted illegally (People v Berrios, 28 NY2d 361, 367 [1971]). If Defendant was arrested without probable cause, the results of the chemical breath test is suppressible evidence as the fruits of an illegal arrest (People v Johnson, 134 Misc 2d 474, 476 [Queens County 1987]).
As stated above, the police had probable cause to arrest Defendant. Furthermore, nothing in the record supports the conclusion that the police acted illegally. Accordingly, defense's motion to suppress all observations of Defendant made by the police, any tangible evidence including an alleged open container of alcohol and all evidence relating to the chemical breath test is DENIED. 
Huntley
The People have the burden of proving beyond a reasonable doubt that a defendant's statements were voluntary (see People v Anderson, 42 NY2d 35, 38 [1977]; People v Huntley, 15 NY2d 72 [1965]; People v Johnson, 139 AD3d 967 [2d Dept 2016]). Whether or not a defendant actually made the statement presents a factual question for the jury (People v Washington, 51 NY2d 214, 221 [1980]). When a person suspected of a crime is taken into custody or significantly deprived of freedom, Miranda warnings must be administered if he or she is to be [*6]interrogated (Miranda v Arizona, 384 U.S. 436 [1966]). Importantly, the subjective beliefs of neither a defendant nor the arresting officer is dispositive of custody (People v Yukl, 25 NY2d 585, 589 [1969]). Instead, the test is an objective one of "what a reasonable [person], innocent of any crime, would have thought had [they] been in the defendant's position" (id.).
Although not binding on this court, the factors set forth in People v Forbes (182 AD2d 829, 829-830 [4th Dept 1992]) provide a useful framework to determine whether a defendant was in custody: "(1) the amount of time the defendant spent with the police, (2) whether [the defendant's] freedom of action was restricted in any significant manner," (3) the location and atmosphere in which the defendant was questioned, (4) the degree of cooperation exhibited by the defendant, (5) whether [the defendant] was apprised of his constitutional rights, and (6) whether the questioning was investigatory or accusatory in nature." 
The People's noticed statement alleges that Defendant said in Spanish, "I had been drinking throughout the day." This statement is reflected neither during PO Ford's testimony nor in BWC footage. Instead, at 6:29 p.m., PO Ramirez tells PO Ford that Defendant admitted to him that he had been drinking since 4:00 p.m.
Setting aside whether by requesting a suppression hearing Defendant waived his right to seek preclusion of the noticed statement because it differed from the one Defendant made to PO Ramirez (See, e.g., People v Williams, 238 AD2d 914 [4th Dept 1997]), Defendant's statement to PO Ramirez occurred after he was arrested and is therefore suppressed. When Defendant admitted to PO Ramirez that he had been drinking since 4:00 p.m., he was outside the car, in handcuffs, and facing the car with two police officers behind him. A person in Defendant's situation, free from any wrongdoing would not reasonably believe he was free to leave under those conditions. Nor was Defendant given Miranda warnings in English or Spanish. Therefore, Defendant's statement to PO Ramirez, regardless of the efficacy of the People's notice or whether it was unnoticed, is the product of a custodial interrogation without the required Miranda warnings. A such, Defendant's motion to suppress these statements are GRANTED.
Atkins/Odum
Defendant moves to suppress the results of his chemical test results based upon the failure to comply with VTL § 1194 because the People failed to provide a translation of the Spanish video played during the IDTU. This misapprehends VTL § 1194(2), People v Odum (31 NY3d 344, 349 [2018]) and People v Atkins (85 NY2d 1007, 1008 [1995]), which stand for the proposition that chemical breath tests performed later than two hours after a defendant's arrest for any subsection of VTL § 1192 are inadmissible unless the People establish that a defendant voluntarily consented to the test.
Such is not the case here. Defendant was arrested at 6:28 p.m. for a VTL § 1192 offense, and the IDTU test occurred at 7:44 p.m., well within the two-hour window. Critically, VTL § 1194 (2) (a) states that "any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of . . . breath . . . for the purpose of determining the alcoholic...content of the blood provided that such test is administered by or at the direction of a police officer with respect to a chemical test of breath . . . ." Here, Defendant is statutorily deemed to have consented to the IDTU test because it was within the two-hour window. Additionally, the IDTU officer's reading of the English request, immediately followed by a [*7]Spanish language video tape, the Defendant's response of "Si", and Defendant's immediate procession to the IDTU machine where he provided a breath sample show no indication of Defendant's intent to refuse to take a breath test.
Finally, Defendant's reliance on People v Medel-Dominguez, 58 Misc 3d 130 (A) (1st Dept. 2017) is misplaced. In Medel-Dominguez, the Appellate Term upheld the hearing court's suppression of the IDTU result because the People did not introduce a translation of the conversation in Spanish between Defendant and the IDTU officer or a translation of a Spanish video (id. at *1 [citing People v Dobson, 285 AD2d 737, 738 [2001]). However, to interpret Medel-Dominguez as creating a requirement for translations of non-English interactions during suppression hearings, misunderstands the Appellate Term's ruling. In upholding the hearing court's ruling, the Appellate Term merely found that the hearing court had committed no reversable error. The Appellate Term provided no further details regarding the circumstances of the test, or the evidence presented at the hearing. Moreover, and despite the sparse record in Medel-Dominguez, it is factually distinguishable from the instant case, as no conversation took place in Spanish between PO Taborda and Defendant. Instead, a Spanish language video was played immediately following an English language request to take a breath test.
Given the deemed consent provision of VTL § 1194 (2) and Defendant's compliant behavior in taking the breath test in the IDTU room, this Court finds that Defendant failed to show that the test was taken involuntarily. For the foregoing reasons, defense's motion to suppress the results of the chemical breath test is DENIED.
The foregoing constitutes the decision and order of the Court.
Dated: November 12, 2025
Bronx, New York
DANIEL M. LEWIS, J.C.C