■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR DEL DUCO, Appellant. [668 NYS2d 704] —Appeal by the defendant from a judgment of the County Court, Putnam County (Sweeny, J.), rendered April 25, 1995, convicting him of murder in the second degree (three counts), burglary in the first degree (three counts), robbery in the first degree (three counts), and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by the defendant to law enforcement officials.

Ordered that the judgment is affirmed.

On March 10, 1994, the defendant beat Albert Krattinger in the head with a club, causing his death approximately one month later. The defendant also stole the victim's wallet and car and drove to Atlantic City, New Jersey. The defendant had known the victim prior to this incident because the defendant's estranged wife and his child lived in the same building as the victim. In fact, approximately one week prior to the beating, while the defendant was visiting with the victim, he stole a $500 money order.

At a pretrial hearing to determine whether statements made by the defendant to his stepfather and physical evidence should be suppressed because the defendant's stepfather acted as an agent of the police, the following testimony was given: after receiving a call from the Putnam County Sheriff's Department regarding the crime, Detective John DeAngelo of the New Castle Police Department asked the defendant's stepfather if he had seen or heard from the defendant. When the stepfather responded that he had not heard from the defendant, Detective DeAngelo asked the stepfather to contact the Putnam County Sheriff's Department if he did hear from the defendant.

Later that evening, the stepfather contacted the police department in New Castle. Detective DeAngelo testified that he subsequently telephoned the stepfather, who told him that the defendant had just called him from Atlantic City, and that he had put the defendant on hold to answer Detective DeAngelo's call. Detective DeAngelo then had Putnam County Investigator Michael Corrigan call the stepfather. During that conversation, Corrigan learned, among other things, that the defendant had told the stepfather that he had "killed a man, that he beat him real bad", that the defendant had a gun in his hand, and that the defendant was considering suicide. More importantly, the stepfather also told Corrigan that he and the

defendant agreed that the stepfather would go to pick up the defendant in Atlantic City and bring him back to New York.

Contrary to the defendant's contention, this hearing testimony did not establish that the stepfather was acting as an agent of the police (see, CPL 60.45 [2] [b] [ii]). To the contrary, the evidence clearly established that the stepfather voluntarily spoke to the police and that he was not encouraged, instructed, or directed to pick up the defendant in Atlantic City. In fact, the testimony indicated that the stepfather's decision to pick up the defendant was made without participation or inducement by the police while the defendant and the stepfather were on the telephone. Although the initial contact with the stepfather was made by Detective DeAngelo, in this conversation Detective DeAngelo did no more than inform the stepfather that the defendant was a suspect, ask the stepfather if he had heard from the defendant, and request that if he did hear from the defendant that he contact the Putnam County Sheriff's Department. Therefore, the hearing court properly determined that the defendant was not entitled to constitutional protections when he admitted to the stepfather that he beat the victim or when he provided the stepfather with the victim's wallet (see, People v Ray, 65 NY2d 282, 286; People v Adler, 50 NY2d 730, 736-737, cert denied 449 US 1014; People v Horman, 22 NY2d 378, 381, cert denied 393 US 1057; People v Warren, 97 AD2d 486, 487).

Furthermore, the defendant's assertion that if the defense counsel had called an expert to testify to his alleged extreme emotional disturbance, he would have been convicted of manslaughter in the first degree rather than murder in the second degree is merely speculative. In fact, the defendant failed to demonstrate that such testimony was available (see, People v Castricone, 224 AD2d 1019, 1020), or that the expert whom the defense counsel failed to call as a witness would have provided evidence to substantiate the affirmative defense (see, People v Skinner, 224 AD2d 916). Moreover, the defense counsel was successful in having the affirmative defense submitted to the jury. Therefore, the defendant was provided with meaningful representation (see, People v Baldi, 54 NY2d 137; People v Ahl, 243 AD2d 985).

In addition, the trial court did not improvidently exercise its discretion in allowing the prosecution to have the defendant demonstrate, with rolled-up paper the same size as the actual weapon, how he used the club to pry the victim away and how he held the club in his right hand while he beat the victim. The demonstration was clearly relevant to demonstrate the

physical acts which the defendant described on direct examination, without the use of an aid (*see, People v Acevedo*, 40 NY2d 701, 704; *People v Boone*, 176 AD2d 1085, 1086).

Finally, the defendant's sentence was not excessive (*see, People v Suitte*, 90 AD2d 80). O'Brien, J. P., Thompson, Santucci and McGinity, JJ., concur.