[874 NYS2d 195]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL MOJICA, Appellant.

Second Department, February 24, 2009

102

**APPEARANCES OF COUNSEL**

*Bruce A. Petito*, Poughkeepsie, for appellant.

*William V. Grady, District Attorney*, Poughkeepsie (*Kirsten A. Rappleyea* of counsel), for respondent.

**OPINION OF THE COURT**

McCarthy, J.

Penal Law § 120.03 (1) provides that a person is guilty of vehicular assault in the second degree when he or she causes serious physical injury to another person, inter alia, while operating a motor vehicle while impaired or intoxicated and causes that serious physical injury as a result of such intoxication. The statute also provides that proof of such operation and the causation of such serious physical injury raises a rebuttable presumption that the serious injury is the result of such intoxication. This appeal presents us with the principal questions of whether the rebuttable presumption violates the defendant's right to due process or whether the statute is unconstitutionally vague for failing to provide fair notice to a person of ordinary intelligence of the conduct it forbids and failing to provide clear law enforcement standards. We find that the statute does not violate due process and is not void for vagueness.

## I. Pretrial *Dunaway/Huntley* Hearing

The defendant Miguel A. Mojica was indicted for operating a motor vehicle while under the influence of alcohol (two counts), in violation of Vehicle and Traffic Law § 1192 (2) and (3), and vehicular assault in the second degree (two counts), in violation of Penal Law § 120.03 (1). In his pretrial omnibus motion, the defendant moved, inter alia, to suppress the results of a blood alcohol test, which the trial court granted to the extent of conducting a joint *Dunaway/Huntley* hearing (*see Dunaway v New York*, 442 US 200 [1979]; *People v Huntley*, 15 NY2d 72 [1965]). At that hearing, the People adduced the following evidence. On July 28, 2006, at approximately 4:00 a.m., in the City of Poughkeepsie, the defendant drove a pickup truck through a red traffic light and struck a marked patrol car driven by a city police officer, Richard Poluzzi. Officer Poluzzi, who was removed from the scene by ambulance and transported to St. Francis Hospital, suffered head injuries and spent one month in an inpatient rehabilitation facility before returning to work six months after the accident, in January 2007. Immediately after the accident, Patrol Officer Edward Fenichel observed the defendant, who was still seated in the driver seat of his pickup truck, detected alcohol on his breath, and saw that his eyes were glassy and bloodshot. The defendant told Officer Fenichel that he had consumed one half of a beer and was on his way to

a bar when the accident occurred. Because the defendant complained of possible head injuries, no field sobriety test was conducted. Officer Fenichel could not determine at that time whether the defendant was intoxicated. When the ambulance arrived, the defendant exited the truck without assistance and was transported by ambulance to Vassar Brothers Hospital (hereinafter the hospital).

At approximately 4:45 A.M., Dutchess County Deputy Sheriff Tyler Wyman arrived at the hospital, where Officer Fenichel briefed him on the circumstances of the accident, his observations of the defendant at the scene, and the defendant's statement to him at the scene that he had consumed one half of a beer earlier that night. Approximately 20 minutes later, at 5:04 A.M., Deputy Sheriff Wyman administered a prescreening test called an Alco-Sensor, which indicated the presence of alcohol in the defendant's system. Based upon his observations, training, and experience, Deputy Sheriff Wyman was by then of the opinion that the defendant was under the influence of alcohol. At approximately 6:01 A.M., Deputy Sheriff Wyman placed the defendant under arrest and read him his driving while intoxicated (hereinafter DWI) warnings (see Vehicle and Traffic Law § 1194 [2] [b]), which the defendant indicated he understood.

The defendant immediately indicated he would consent to a chemical test, which requires a blood draw, and signed a consent form at 6:04 A.M. At that point, which was approximately two hours after the accident and within minutes of his arrest, the defendant's blood was drawn by a hospital nurse and his blood alcohol content (hereinafter BAC) was later determined to be .18%, which is more than twice the legal limit (see Vehicle and Traffic Law § 1192 [2]).

More than one hour later, at 7:19 A.M., Deputy Sheriff Wyman advised the defendant of his Miranda rights (see Miranda v Arizona, 384 US 436 [1966]), and the defendant, both in writing and orally, indicated he understood those rights and agreed to speak with Deputy Sheriff Wyman. In response to Deputy Sheriff Wyman's inquiry, the defendant stated that he had consumed a mixed alcoholic drink known as a Long Island iced tea approximately four hours before the accident, and was on his way to a bar when the accident occurred.

The defendant was the sole witness for the defense at the hearing. In his testimony, the defendant stated that he was not advised of his Miranda rights or DWI warnings until a judge, accompanied by police officers and state troopers, arraigned him

in his hospital room between 8:00 A.M. and 9:00 A.M. The defendant asserted that it was only at that time that he realized he was under arrest. The defendant further testified that, at the time he signed the consent form for his blood to be drawn, he believed his blood needed to be drawn as part of his medical care, not as part of the criminal investigation.

In rebuttal, the People called as a witness Deputy Jeffrey Wilkinson, who had been present at the defendant's arraignment in the hospital. Deputy Wilkinson testified that, during the arraignment, the judge did not advise the defendant of his *Miranda* rights.

At the conclusion of the hearing, the court denied that branch of the defendant's omnibus motion which was to suppress the results of the blood alcohol content (hereinafter BAC) test, finding that Deputy Sheriff Wyman had probable cause to arrest the defendant for driving while intoxicated based on information Officer Fenichel relayed to him, his own observations, and the results of the Alco-Sensor test he had administered to the defendant.

## II. The Trial

At trial, the People presented the following pertinent evidence:[1]

Eyewitness Kimberly Friedman[2] testified that, just prior to the accident, she was driving her car along North Bridge Street and, as she approached its intersection with Mill Street, the green light was in her favor. Just before she turned her vehicle right onto Mill Street, she observed a pickup truck on Mill Street, with its headlights on, approaching the intersection from her left. Without slowing down, the truck went through the intersection and hit a police vehicle that was traveling along North Bridge Street through the intersection from the side of Mill Street opposite to her vehicle. Friedman's passenger called 911, while Friedman approached the police vehicle, and found Officer Poluzzi with his head against the passenger side window, apparently unconscious. The police arrived within minutes.

City Police Officer William Badner, a certified accident reconstructionist and crime scene technician with the City Traffic

1. To the extent that the trial testimony of Officer Fenichel and Deputy Sheriff Wyman was largely repetitive of their pretrial hearing testimony, we do not summarize it herein.

2. Friedman also testified that since the accident, she had been charged in Ulster County with driving while intoxicated, and that at the time of the trial, the matter was pending.

Division, visited the scene at approximately 4:30 A.M. on the morning of the accident, or about 30 minutes after the accident. Among other things, Officer Badner checked the street and traffic lights at the intersection of Mill and North Bridge Streets and found everything fully operational. In addition, Steven Scano, an electrician responsible for maintaining street and traffic lighting in the city, testified that two years before the accident, the traffic light at the subject intersection had been upgraded by computerizing the traffic cycles and replacing the single light bulbs in each traffic signal with hundreds of light-emitting diode lamps. Further, Scano explained that because of a blind corner on Mill Street, he had programmed the signals with a two-second safety delay on the red lights, so that the traffic lights facing both streets would all be red for two seconds before one traffic signal turned green. Approximately 4½ hours after the accident, Scano checked the computer that governs the traffic lights at the intersection and found no recorded failure alarms, which are automatically generated if, for example, two green lights or two yellow lights simultaneously appeared on both Mill and North Bridge Streets, or if there had been a power dip. Scano also personally observed five or six traffic light cycles and found everything functioning properly.

New York State Police Sergeant Frank B. Lynch, a collision reconstructionist, testified on the basis of his observations of the accident location, which were made approximately 3½ hours after the accident, as well as his examination of the two vehicles. According to Sergeant Lynch, marks on the roadway and the damage to the vehicles indicated that the 4,400-pound police vehicle had been traveling north at a speed of approximately 29 miles per hour, when it was struck on its right side by the westbound truck, which weighed 4,900 pounds and was traveling at a speed of approximately 37 miles per hour. The posted speed limit for both Mill and North Bridge Streets is 30 miles per hour. The front end of the police vehicle was damaged postimpact, when it collided with a fire hydrant, sign, garbage pails, and a porch railing. Sergeant Lynch found no evidence of a steering wheel or brake malfunction on either vehicle.

Sergeant Lynch's testimony that his examination of the police vehicle's seat belt indicated that Officer Poluzzi had not been wearing a seat belt at the time of the accident prompted a lengthy sidebar. The defense argued that Officer Poluzzi's failure to use a seat belt was an intervening cause of his injuries and rebutted the presumption that the defendant caused "seri-

ous" physical injury to Officer Poluzzi, as opposed to merely causing the accident or physical injury. However, the defense conceded that it did not have an expert witness who could testify as to the injuries that would have been mitigated had Officer Poluzzi worn his seat belt. The defense then moved to dismiss the indictment, arguing that there was insufficient evidence that Officer Poluzzi suffered a serious physical injury as a result of the accident. The court denied the motion and explained that it would instruct the jury that it could not consider Officer Poluzzi's failure to wear a seat belt an intervening cause of his injuries because a police officer is exempt from having to wear a seat belt (see Vehicle and Traffic Law § 1229-c [3]).

The defendant was the only witness for the defense. The defendant testified that he had a felony conviction from 1999 and a misdemeanor conviction from 1997 for cashing forged checks. The defendant also testified that, approximately four hours before the accident, while at the Mad Hatter bar, he drank a Long Island iced tea, which contains three or four different types of liquor. At 3:00 A.M., approximately one hour before the accident, he left the Mad Hatter for a second bar on Mill Street, driving a rental truck since his vehicle was being repaired. According to the defendant, as he drove on Mill Street and approached the intersection of North Bridge Street, the green light was in his favor, but turned yellow while he was approximately 20 feet away, and was still yellow when he entered the intersection. Prior to the impact, he did not see another vehicle in the intersection, but felt the front end of his truck hit something, and then his truck's air bag deployed.[3]

The jury convicted the defendant of all four counts of the indictment, to wit, operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) and (3) (two counts) and vehicular assault in the second degree in violation of Penal Law § 120.03 (1) (two counts). The court thereafter sentenced the defendant, as a second felony offender, to concurrent terms of 2 to 4 years on each count of vehicular assault in the second degree and one year on each count of operating a motor vehicle while under the influence of alcohol (commonly known as DWI).

---

**3.** The remainder of the defendant's testimony and the People's rebuttal testimony was similar to the pretrial hearing testimony, summarized above.

### III. Analysis

Among other arguments, the defendant contends that Penal Law § 120.03 violates the right to due process because of the rebuttable presumption that a person who commits DWI caused the subject accident resulting in serious physical injuries. He further contends that the statute is unconstitutionally vague since it fails to give fair notice to a person of ordinary intelligence of what it forbids and fails to provide clear law-enforcement standards. For the reasons set forth below, we reject the defendant's arguments.

Preliminarily, although the defendant failed to preserve for appellate review his constitutional challenges to Penal Law § 120.30 by not making a timely pretrial written motion to dismiss the indictment on this ground (*see* CPL 210.20, 210.25 [3]; 210.45), we reach this issue as a matter of discretion in the interest of justice. We note that the Attorney General of the State of New York was notified pursuant to Executive Law § 71 that the defendant was challenging the constitutionality of Penal Law § 120.30, but determined not to intervene.

"It is a fundamental requirement of due process that a criminal statute must be stated in terms which are reasonably definite so that a person of ordinary intelligence will know what the law prohibits or commands" (*People v Cruz*, 48 NY2d 419, 423-424 [1979]; *see People v Stuart*, 100 NY2d 412, 418-419 [2003]). The purpose of the requirement is twofold: (1) provide the defendant with "adequate warning of what the law requires so that he may act lawfully," and (2) "prevent arbitrary and discriminatory enforcement by requiring boundaries sufficiently distinct for police, Judges and juries to fairly administer the law" (*People v Cruz*, 48 NY2d at 424 [internal quotation marks omitted]).

In 2005, approximately one year before the subject accident, the statutes concerning vehicular assault in the first and second degrees and vehicular manslaughter in the first and second degrees (*see* Penal Law §§ 120.03, 120.04, 125.12, 125.13) were amended and designated as "Vasean's law,"[4] to eliminate crimi-

---

4. The law was named after 11-year old Vasean Alleyne, who was struck and killed by an intoxicated driver. Because there was inadequate proof of criminal negligence, the driver was charged only with a misdemeanor (*see* Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law articles 120, 125, 2009 Pocket Part, at 62, 214).

nal negligence as a required element of each of the crimes,[5] and provided that after the People establish that the defendant driver caused serious injury or death, a rebuttable presumption would arise that the serious injury or death was caused by the driver's intoxication, impairment, or use of a drug[6] (*see* L 2005, ch 39, § 6, as amended by L 2005, ch 92, § 1; *People v Van Sickle*, 120 AD2d 897 [1986]). Specifically, as amended, Penal Law § 120.03 provides:

> "A person is guilty of vehicular assault in the second degree [a class E felony] when he or she causes serious physical injury to another person, and . . .

> "(1) operates a motor vehicle in violation of subdivision two, three, four or four-a of section eleven hundred ninety-two of the vehicle and traffic law . . . and as a result of such intoxication or impairment by the use of a drug, or by the combined influence of drugs or of alcohol and any drug or drugs, operates such motor vehicle . . . in a manner that causes such serious physical injury to such other person[.] . . .

> "If it is established that the person operating such motor vehicle . . . caused such serious physical injury while unlawfully intoxicated or impaired by the use of alcohol or a drug, then there shall be a rebuttable presumption that, as a result of such intoxication or impairment by the use of alcohol or a drug, or by the combined influence of drugs or of alcohol and any drug or drugs, such person operated the motor vehicle . . . in a manner that caused such serious physical injury, as required by this section."

---

5. In proving criminal negligence, the prosecution had to show more than intoxication. Its burden was to "prove that the defendant's intoxication affected his physical and mental capacity to the extent that it caused him to operate his vehicle in a culpably reckless manner" (*People v Bast*, 19 NY2d 813, 815 [1967]; *see Matter of Johnston*, 75 NY2d 403, 410 [1990]).

6. The Assembly Memorandum in Support of Vasean's law explained: "The elimination of the criminal negligence element and the addition of the rebuttable presumption provision would create a casual [*sic*] link between a driver who causes serious physical injury or death and a presumption that it was his or her intoxication or impairment that was the cause o[f] such serious physical injury or death. The accused would be able to rebut such a presumption by presenting evidence that tends to show that it was indeed a separate intervening factor or factors that caused the serious physical injury or death" (Bill Jacket, L 2005, ch 39, at 3).

The defendant contends that the clause "as a result of such intoxication or impairment," coupled with the rebuttable presumption that the DWI caused the serious physical injuries, renders the statute unconstitutionally vague because an individual who was DWI without causing the subject accident nevertheless falls within the parameters of the statute. As an example, the defendant notes that a person who was DWI in violation of the Vehicle and Traffic Law may lawfully stop at a red light, but be struck by another motorist who sustains serious physical injuries in the collision. As another example, the defendant describes an intoxicated person who fully stops at a stop sign, checks for oncoming traffic before proceeding into the intersection, but because his or her vision is obstructed by an adjacent building, fails to see a speeding vehicle, and in the ensuing collision, the other driver sustains serious physical injuries. The defendant notes that although the person in both hypotheticals may have been DWI in violation of Vehicle and Traffic Law § 1192, he or she was innocent of causing the accident. Yet, under the statute, a rebuttable presumption would exist that the person who was driving while intoxicated committed vehicular assault in the second degree in violation of Penal Law § 120.03 (1).

However, our reading of the statute does not support the defendant's argument. The statute provides, in pertinent part, that the rebuttable presumption that the defendant's intoxication caused the subject accident arises only "[i]f it is established that the person operating such motor vehicle . . . caused such serious physical injury while unlawfully intoxicated or impaired by the use of alcohol or a drug." Thus, if a driver's operation of a vehicle cannot be deemed a proximate cause of the subject accident, then the rebuttable presumption would not arise. We further note that, even if the defendant is correct that the statute would deny due process to hypothetical defendants who may have been DWI in violation of Vehicle and Traffic Law § 1192 but did not cause the accident, we do not reach that issue, as the defendant may not assert a due process challenge contending that the statute is vague as applied to the conduct of others (see Broadrick v Oklahoma, 413 US 601, 608 [1973]; People v Shack, 86 NY2d 529, 538 [1995]; People v Nelson, 69 NY2d 302, 308 [1987]).

In any event, the People's evidence at trial clearly was sufficient to give rise to the rebuttable presumption. The defendant told Deputy Sheriff Wyman that he had consumed a mixed

alcoholic drink prior to the accident. Further, approximately two hours after the accident, the defendant's BAC tested at .18%, more than twice the legal limit (*see* Vehicle and Traffic Law § 1192 [2]). Accordingly, the People proved beyond a reasonable doubt that the defendant was *per se* driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) and driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3) (*see People v Donohue*, 229 AD2d 396 [1996]; *People v Bowers*, 201 AD2d 830 [1994]; *People v Miller*, 199 AD2d 692, 694 [1993]). Additionally, two eyewitnesses, Friedman and her passenger, testified that the defendant had a red light as he approached the subject intersection. Neither eyewitness indicated that the defendant slowed down as he approached the intersection. Further, Scano, an electrician responsible for maintaining the City's street and traffic lighting, testified that the traffic signals at the subject intersection were fully operational and the system did not indicate any failure alarms, which are automatically generated if two green or two yellow traffic lights simultaneously appeared on both Mill and North Bridge Streets, or if there had been a power dip. In addition, Sergeant Lynch testified that his examination of the roadway and the two vehicles indicated that the defendant did not brake prior to impact and there was no malfunction in the steering wheel or brakes of the defendant's truck. Under the circumstances, the People established beyond a reasonable doubt that the defendant operated a vehicle while intoxicated and that his operation of such vehicle caused serious physical injury to another person (*see* 1 Charges to Jury and Requests to Charge in a Criminal Case in New York § 10:38). Accordingly, a rebuttable presumption arose that the defendant's intoxication was the proximate cause of the accident (*see* Penal Law § 120.03). The verdict demonstrates that the jury rejected the defendant's testimony that he had a yellow traffic light as he entered the intersection and credited the testimony of Friedman and her passenger. Had the jury accepted such testimony, given Scano's testimony that there were no malfunctions of the traffic lights at the intersection, it would have meant that the jury found that Officer Poluzzi disregarded a red traffic light, thereby rebutting the presumption since Officer Poluzzi's conduct would be deemed an intervening cause of the accident.

Turning then to a determination of whether Penal Law § 120.03 is void for vagueness, the test is twofold: whether the statute (1) is "sufficiently definite 'to give a person of ordinary

intelligence fair notice that his [or her] contemplated conduct is forbidden by the statute' " so that he or she may act accordingly (*People v Nelson*, 69 NY2d 302, 307 [1987], quoting *People v Smith*, 44 NY2d 613, 618 [1978], quoting *United States v Harriss*, 347 US 612, 617 [1954]; *see Grayned v City of Rockford*, 408 US 104, 108-109 [1972]; *Papachristou v Jacksonville*, 405 US 156, 162 [1972]; *People v Stuart*, 100 NY2d at 420) and (2) "provides officials with clear standards for enforcement" so as to avoid ad hoc or subjective enforcement (*People v Stuart*, 100 NY2d at 420; *see Grayned v City of Rockford*, 408 US at 108-109; *Papachristou v Jacksonville*, 405 US at 162; *People v Nelson*, 69 NY2d at 307). The danger of an impermissibly vague statute is that it prevents a potential offender from discerning what conduct is illegal and delegates basic policy determinations to the police, allowing law enforcement officers to be guided by whim and their personal predilections (*see Kolender v Lawson*, 461 US 352, 358 [1983]; *Smith v Goguen*, 415 US 566, 574-575 [1974]; *People v Stuart*, 100 NY2d at 420-421; *People v Nelson*, 69 NY2d 302, 307 [1987]).

To reiterate, Penal Law § 120.03 provides in pertinent part that a person commits vehicular assault in the second degree when (1) "he or she causes serious physical injury to another person," (2) "operates a motor vehicle in violation of" Vehicle and Traffic Law § 1192 (2), (3), (4) or (4-a), and (3) "as a result of such intoxication or impairment by the use of a drug, or by the combined influence of drugs or of alcohol and any drug or drugs, operates such motor vehicle . . . in a manner that causes such serious physical injury to such other person" (Penal Law § 120.03 [1]).

In essence, the statute prohibits operating a vehicle in a manner that causes serious physical injury and while intoxicated and/or impaired by drugs in violation of Vehicle and Traffic Law § 1192 (2), (3), (4) or (4-a). We find that the language conveys sufficiently definite warning as to the proscribed conduct "when measured by common understanding and practices" (*People v Shack*, 86 NY2d at 538). Specifically, the phrase "as a result of such intoxication" would be understood to mean that "by virtue of" or "flowing from" a driver's voluntary consumption of alcohol "to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver[,]" serious physical injury occurs (*People v Cruz*, 48 NY2d at 428). Similarly, the statute provides clear guidelines to law

enforcement personnel; a person may be arrested for violating Penal Law § 120.03 based upon probable cause to believe that the defendant was DWI and in doing so, operated a vehicle in a manner that caused serious physical injury (*see People v Foley*, 94 NY2d 668, 680-681 [2000]).

We further find that, viewing the facts in a light most favorable to the People, the verdict was legally sufficient, as "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Acosta*, 80 NY2d 665, 672 [1993], quoting *People v Steinberg*, 79 NY2d 673, 681-682 [1992]; *see People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Contes*, 60 NY2d 620, 621 [1983]).

Moreover, upon our independent review (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d at 348-349), and according great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]). The jury was entitled to reject the defendant's attempt to rebut the presumption that his DWI caused the subject accident. The jury verdict demonstrated that the jury credited the testimony of the two eyewitnesses who were in a car on North Bridge Street and who both testified that their vehicle had a green light when the defendant's truck, traveling on Mill Street, approached the intersection. Coupling Scano's testimony that the traffic signals at the intersection were functioning properly with the two eyewitnesses' testimony that their vehicle had a green light, supports the jury's implicit finding that the defendant disregarded a red light and, thus, he failed to rebut the presumption that his act of DWI caused the subject accident.

We further note that it was not error to bar the defense from contending that Officer Poluzzi's failure to wear a seat belt was an intervening cause of his serious physical injuries. The defendant's contention on this point was pure speculation, as defense counsel conceded that it had no expert witness available who could quantify or specify which of Officer Poluzzi's injuries would have been mitigated had he worn his seat belt (*see People v Del Duco*, 247 AD2d 487, 488 [1998]; *People v Castricone*, 224 AD2d 1019 [1996]; *see also People v Muller*, 57 AD3d 1113 [2008]). In any event, Officer Poluzzi, as an operator

of an authorized emergency vehicle, was exempt from the requirement that he wear a seat belt (*see* Vehicle and Traffic Law §§ 101, 1229-c [3], [4]). Further, even if no exemption applied, and the victim were a lay person, the mere necessity of drafting a statute such as Vehicle and Traffic Law § 1229-c (3), which generally requires drivers to wear seat belts, and imposing fines for its violation, compels the conclusion that it is reasonably foreseeable that a driver of another vehicle might not be wearing a seat belt, and that as a result, a broadside collision would produce serious physical injuries. Put differently, it cannot be stated that Officer Poluzzi's conduct in electing not to wear his seat belt "constituted such a departure from driving norms as to be unforeseeable, i.e., beyond the mere negligence of the other motorists, sufficient to negate the defendant's responsibility in causing the accident" (*People v Lazartes*, 23 AD3d 400, 405-406 [2005]). Moreover, although the issue of foreseeability is generally one for the factfinder, under these circumstances, the court properly decided the issue as a matter of law (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]).

■ Contrary to the defendant's contention, Deputy Sheriff Wyman had probable cause to arrest the defendant for DWI based on the totality of the circumstances, which included the information communicated to Deputy Sheriff Wyman by Officer Fenichel—who had been on the accident scene and had spoken with the defendant—when Deputy Sheriff Wyman arrived at the hospital, his own observations at the hospital of the defendant's bloodshot and glassy eyes, and detection alcohol on his breath, and the results of the Alco-Sensor test that showed alcohol in the defendant's system (*see People v Bigelow*, 66 NY2d 417, 423 [1985]; *People v Kowalski*, 291 AD2d 669, 670 [2002]; *People v Ricciardi*, 149 AD2d 742 [1989]). Moreover, although the defendant sustained a head wound during the accident, the evidence adduced at the hearing from officers and the defendant's treating physician demonstrate that the defendant was conscious, coherent, and capable of exercising his rights. Further, there was no evidence that in obtaining the defendant's consent, Deputy Sheriff Wyman engaged in coercion, illegality, or deception. As such, the evidence supports the hearing court's determination that the defendant voluntarily consented to the blood draw for testing his BAC (*see People v Osburn*, 155 AD2d 926, 927 [1989]). Additionally, there is no basis in the record to disturb the suppression court's credibility determination regard-

ing the People's evidence on this issue (*People v Lynch*, 50 AD3d 824 [2008]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

The defendant's contentions in point VIII of his brief involve matter dehors the record, and his contentions in point IX of his brief are without merit.

Accordingly, we affirm the judgment.

FISHER, J.P., COVELLO and LEVENTHAL, JJ., concur.

Ordered that the judgment is affirmed.