Egan Jr., J.
Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered July 6, 2012, convicting defendant following a nonjury trial of the crimes of driving while intoxicated and driving while ability impaired.
On the evening of June 8, 2011, defendant left her place of employment between 8:00 p.m. and 8:30 p.m. and drove to Ashes *1167 Pub & Grill in the Town of Warrensburg, Warren County, where she consumed a 16-ounce “Jack and Coke.” Approximately 45 minutes later, defendant left that establishment and drove to the Garrison in the Village of Lake George, Warren County, where — over the course of the next hour or so — she consumed two “Twisted Teas” and a shot of whiskey. Shortly after leaving the Garrison around 10:00 p.m., defendant began to feel the effects of the alcohol she had consumed and, roughly 30 minutes later, defendant called her husband, Pete Menegan, and asked him to meet her at the Valero gas station — located off exit 17 of Interstate 87 in Saratoga County — and give her a ride home. Upon arriving at the gas station, defendant backed her car into a parking space, striking a parked tractor trailer in the process. Menegan thereafter arrived but, following a conversation with defendant, Menegan called 911 to report that defendant was “pretty drunk” and had “backed into something” in the parking lot, and that he, in turn, was “now . . . leaving her [t]here.”
At 11:22 p.m., and in response to Menegan’s 911 call, Trooper Robert Schmidt Jr. was dispatched to the Valero gas station. Upon arriving, Schmidt observed a vehicle matching the description he had been given and, as he approached the driver— later identified as defendant — he noticed that the hood of the car was still warm and that debris from a cracked rear tail light was on the ground. Schmidt then spoke with defendant, who admitted that she had been drinking and acknowledged that she should not be driving, prompting Schmidt to administer three field sobriety tests — all of which defendant failed.[1] Defendant was placed under arrest for driving while intoxicated at approximately 11:46 p.m., read her rights and placed in the patrol vehicle, whereupon she lamented the fact that she was “get[ting] arrested because [she was] impaired and . . . hit a truck.” A breath test conducted at 1:06 a.m. revealed that defendant had a blood alcohol content (hereinafter BAG) of .11%.
Defendant thereafter was indicted and charged with two counts of driving while intoxicated (hereinafter DWI). Following a nonjury trial, defendant was acquitted of the common-law DWI count but convicted of the lesser included offense of driving while ability impaired (see Vehicle and Traffic Law § 1192 ), as well as DWI per se (see Vehicle and Traffic Law § 1192 ). County Court sentenced defendant, who had prior alcohol-related convictions, to, among other things, four months in jail followed by five years of probation. Defendant now appeals.
Defendant initially contends that the People failed to lay a *1168 proper foundation for the admission of the breath test results. We disagree. “Breath test results are admissible where the People establish that the machine is accurate, that it was working properly when the test was performed and that the test was properly administered” (People v Murphy, 101 AD3d 1177, 1178 [2012] [internal quotation marks and citations omitted]; see People v Travis, 67 AD3d 1034, 1035 [2009], lv denied 14 NY3d 845 [2010]).
Here, the testimony of the trooper who administered the breath test to defendant, together with the documents pertaining to, among other things, the calibration and maintenance of the Alcotest 9510 (the machine upon which defendant’s test was performed) and the chemicals used during the test, constituted “evidence from which the trier of fact could reasonably conclude that the test results were derived from a properly functioning machine using properly constituted chemicals” (People v Kulk, 103 AD3d 1038, 1041 [2013] [internal quotation marks and citation omitted]). As for defendant’s challenge to the admissibility of certain supporting documents, defendant did not object to the admission of Schmidt’s breath analysis operator certification (exhibit No. 4) or the actual breath test results (exhibit No. 8), and we are satisfied that the breath test rules (exhibit No. 5), calibration and maintenance records (exhibit No. 6) and reference gas records (exhibit No. 7) were properly certified and admitted pursuant to CPLR 4518 (c). Finally, to the extent that defendant’s brief may be read as asserting a Confrontation Clause violation, we note that “documents pertaining to the routine inspection, maintenance and calibration of breathalyzer machines are nontestimonial under Crawford and its progeny” (People v Pealer, 20 NY3d 447, 456 [2013] ; see People v Hulbert, 93 AD3d 953, 953-954 [2012]).
Defendant next asserts that County Court erred in admitting the testimony offered by the People’s expert witness, Michael Holland. Initially, to the extent that defendant contends that Holland, a board-certified toxicologist, was not properly qualified as an expert witness, we disagree. Simply put, we are satisfied that Holland “possessed sufficient education, training and experience from which County Court could infer that [his] opinion would be reliable” (People v Surdis, 77 AD3d 1018, 1019 [2010], lv denied 16 NY3d 800 [2011]; see People v Wyant, 98 AD3d 1277, 1278 [2012]; see also Matott v Ward, 48 NY2d 455, 459 [1979]).
We reach a similar conclusion with respect to defendant’s generalized challenge to the theory of reverse extrapolation— the process by which an expert, taking into consideration, *1169 among other things, an individual’s known BAG at a particular point in time, renders an opinion as to the individual’s BAG at an earlier point in time. Assuming the expert in question is qualified and a proper foundation has been laid for such opinion, reverse extrapolation testimony may be admitted (see e.g. People v Dombrowski-Bove, 300 AD2d 1122, 1123 [2002]; People v O’Connor, 290 AD2d 519, 520 [2002], lv denied 97 NY2d 758 [2002]; People v Cross, 273 AD2d 702, 703 [2000]; People v MacDonald, 227 AD2d 672, 674-675 [1996], affd 89 NY2d 908 [1996]). Here, however, the People failed to lay a proper factual foundation for Holland’s testimony and, therefore, defendant’s objection in this regard should have been sustained.[2]
Turning to the weight and sufficiency of the evidence supporting defendant’s conviction, we note that defendant failed to renew her motion to dismiss for legally insufficient evidence at the close of all proof and, therefore, her argument on this point is not preserved for our review (see People v Newland, 83 AD3d 1202, 1204 n [2011], lv denied 17 NY3d 798 [2011]). That said, “our weight of the evidence [analysis] necessarily involves an evaluation of whether all elements of the charged crime [s] were proven beyond a reasonable doubt at trial” (People v Burch, 97 AD3d 987, 989 n 2 [2012] [internal quotation marks and citations omitted], lv denied 19 NY3d 1101 [2012]). Here, in light of Schmidt’s observations of defendant and her vehicle on the night in question and defendant’s own testimony, we find ample evidence to support defendant’s conviction of driving while ability impaired, which required nothing more than a showing that defendant operated a motor vehicle while her ability to do so was “impaired by the consumption of alcohol” (Vehicle and Traffic Law § 1192 [1]). Notably, defendant testified that after leaving the Garrison and while en route to her home, she “started to feel not right” and realized “that the alcohol [she had consumed] was hitting [her].” When pressed on this point, defendant acknowledged that she started to feel “impaired” after departing for home, knew that she “needed to pull over” *1170 and called Menegan en route because she wanted “a safe ride home.” Such testimony, coupled with other proof in the record, is more than adequate to sustain defendant’s conviction in this regard.
We reach a similar conclusion with respect to defendant’s conviction of DWI per se, i.e., operating a motor vehicle with a BAG of .08% or greater (see Vehicle and Traffic Law § 1192 [2]). Although Holland’s reverse extrapolation testimony should not have been admitted into evidence, we deem this error to be harmless (see People v Heidelmark, 214 AD2d 767, 769 [1995], Iv denied 85 NY2d 973 [1995]). The breathalyzer test was administered within two hours of defendant’s arrest and revealed a BAG of .11%, which is sufficient to establish a prima facie violation of Vehicle and Traffic Law § 1192 (2). Such proof, coupled with defendant’s admissions, slurred speech, glassy eyes and failed field sobriety tests, as well as Schmidt’s observations of defendant’s vehicle, support the finding that defendant operated a motor vehicle with a BAG of .08% or greater in violation of Vehicle and Traffic Law § 1192 (2) (see People v Mertz, 68 NY2d 136, 146 [1986]; People v Arnold, 2 AD3d 975, 975 [2003], Iv denied 1 NY3d 594 [2004]; People v Poje, 270 AD2d 649, 650-651 [2000], Iv denied 95 NY2d 802 [2000]; People v Stiffler, 237 AD2d 753, 754 [1997], Iv denied 90 NY2d 864 [1997]; see also People v Mojica, 62 AD3d 100, 110-111 [2009], Iv denied 12 NY3d 856 [2009]; People v Lundell, 24 AD3d 569, 570 [2005]). Defendant’s remaining contentions, including her assertion that Menegan’s limited testimony violated the marital privilege (see CPLR 4502 [b]; CPL 60.10), have been examined and found to be lacking in merit.
Peters, P.J., Rose and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

. Schmidt further noted that defendant smelled of alcohol and exhibited slurred speech and glassy eyes.

. The record reflects some dispute as to the precise information that Holland needed in order to accurately perform this calculation — with the parties debating the extent to which defendant’s extrapolated BAG was or could have been affected by her height/weight, past drinking practices/experience, the type of alcohol/number of drinks she consumed, the amount/type of food, if any, present in her stomach while she was drinking and the time at which she started/stopped drinking on the night in question. We need not decide, however, which of the cited variables Holland should have taken into consideration in performing his analysis. Rather, it is sufficient for purposes of this appeal that the People failed to lay an adequate factual foundation for the variables upon which Holland did rely.