People v Paul (2024 NY Slip Op 50357(U))

[*1]

People v Paul

2024 NY Slip Op 50357(U)

Decided on April 3, 2024

Justice Court of the Town of Crawford, Orange County

Schuh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 8, 2024; it will not be published in the printed Official Reports.

Decided on April 3, 2024
Justice Court of the Town of Crawford, Orange County

The People of the State of New York, Plaintiff,

against
Joceline Paul, Defendant.

Docket No. 23080004

 Orange County District Attorney David Hoovler by ADA Jessica Sayre-Smith, Esq.
Legal Aid Society of Orange County, David Lindine, Esq.

Mark L. Schuh, J.

The defendant stands charged with the misdemeanor of driving while ability impaired by drugs in violation of Section 1192 (4) of the Vehicle and Traffic Law, failure to wear a seat belt in violation of VTL §1229-C(3) and consumption of alcohol or cannabis in a motor vehicle in violation of VTL § 1227 (1) arising from a motor vehicle stop which occurred on May 8, 2023.
A Huntley/Probable Cause hearing was conducted, on consent, on February 5, 2024. At the hearing, the people presented testimony from Town of Crawford Police Officer Matthew Sudol. At the conclusion of the hearing, the people and defense each declined to submit memoranda of law but opted to make closing statements. In accordance with CPL 710.60 (6), the following shall constitute this Court's findings of fact and conclusions of law.
FINDINGS OF FACT:
Officer Sudol has been a police officer for approximately six years. He has been trained in Standardized Field Sobriety Testing and completed ARIDE (Advanced Roadside Impairment Driving Enforcement) training. He has been involved in approximately 50 arrests for driving while intoxicated/impaired. 
On May 8, 2023, at approximately 4:48pm, PO Sudol was conducting vehicle and traffic law enforcement in the Town of Crawford in the vicinity of McDonalds on Route 52. Sudol was traveling westbound and observed a blue Dodge Ram traveling eastbound on Route 52 being operated by a female who was not wearing a shoulder harness. PO Sudol was able to observe this as she was wearing a shirt that would contrast with a seatbelt harness and it would have been observable if she was wearing it. 
PO Sudol acknowledged that he did not observe any erratic operation and could not see the defendant's waist.
PO Sudol made a U-turn and activated his emergency lights to pull the vehicle over. He [*2]approached the driver and requested her driver's license and registration. He also observed her boyfriend, who was a passenger in the vehicle. The operator was identified at this time of the stop. The defendant was identified on the record as the operator.
PO Sudol observed that the defendant had glassy and bloodshot eyes and pinpoint pupils. He further observed the very strong odor of burning cannabis.
He engaged the driver in conversation. Sudol asked defendant if she had smoked cannabis that day and she advised him that she had used cannabis one hour prior. He asked for the smoking apparatus and was given a smoking pipe with what appeared to be charred marijuana in it. He observed the pipe to be warm to the touch.
PO Sudol had the driver exit the vehicle and had the defendant perform field sobriety tests.
PO Sudol had Defendant perform field sobriety tests and determined that the defendant passed the following tests: Horizontal Gaze Nystagmus, Walk & Turn, One Leg Stand, Finger to Nose.
PO Sudol determined that the defendant failed the following field sobriety tests: 
1. Lack of Convergence: A stimulus circled defendant's face two times and then went toward the tip of the defendant's nose. The eyes lacked convergence. One of Defendant's eyes drifted off instead of following the stimulus.
2. Modified Romberg: Defendant was asked to close her eyes, stand in a certain position and estimate the passage of 30 seconds. She stopped at 8 ½ second saying that she stopped at "twentyish something". Officer Sudol concluded that Defendant was impaired by marijuana. 
Defendant was then read a DWI/DWAI chemical test refusal warning, with a modification in that the officer advised that she was "detained" instead of "arrested". She advised that she would consent to a blood test.
Defendant was handcuffed in front and transported to Garnet Medical Center where Sudol read Defendant DWI warnings again, this time without modification. She circled "Yes" on the form in response to the question of her willingness to submit to chemical test.
She was read her Miranda [FN1]
rights from the same form and circled "Yes" to understanding her rights. She further circled "Yes" next to the question "NOW THAT I HAVE ADVISED YOU OF YOUR RIGHTS, ARE YOU WILLING TO ANSWER MY QUESTIONS?"
Defendant then signed the paper form containing both the DWI/DWAI chemical test refusal warning and the Miranda warnings. 
Thereafter, Officer Sudol and Defendant had further conversation wherein Defendant stated that she was a habitual marijuana smoker and that the test would come back positive "irregardless [sic]".
LEGAL ANALYSIS:
Defendant urges that PO Sudol did not have probable cause to pull over the defendant based upon his observation that the defendant was not wearing a shoulder strap without being [*3]able to see if she was wearing a lap belt. Indeed, VTL § 1229 (c) (3) states, "[n]o person shall operate a motor vehicle unless such person is restrained by a safety belt approved by the commissioner." While this section is silent as to the requirement to wear a shoulder strap, §1229 (c) (3-a) provides that "[e]xcept as otherwise provided for passengers under the age of four, it shall be a violation of this section if a person is seated in a seating position equipped with both a lap safety belt and a shoulder harness belt and such person is not restrained by both such lap safety belt and shoulder harness belt." Inasmuch as the testimony established that the defendant's seating position was equipped with both a safety belt and shoulder harness belt, PO Sudol had probable cause to charge this offense. Argument that antique vehicles exist that were manufactured before the shoulder harness was mandatory equipment may have bearing for an operator of such a vehicle when determining guilt, but such an argument does not impact the officer's probable cause to initiate a vehicle stop. 
Defendant further argued that there were no tests that established impairment. Notwithstanding this assertion, PO Sudol testified to his administration and the defendant's failure of the Lack of Convergence test. Defendant further urged the court to disregard the Modified Romberg test because Officer Sudol was uncertain if it was approved by the National Highway Traffic Safety Administration for detecting marijuana impairment. Officer Sudol testified that the Modified Romberg was part of his ARIDE training. Moreover, the Romberg test has been accepted in courts as part of the body of evidence used to establish probable cause of impairment, including impairment by drugs other than alcohol. (See People v Caden N., 189 AD3d 84 [3d Dept 2020], People v. Cimino, 48 Misc 3d 1215(A), People v. McGarry, 21 Misc 3d 1104(A).
Defendant asserts that, for Miranda purposes, Defendant was in custody as soon as she handed over the marijuana pipe as, according to Defendant, any reasonable person would know that they were going to be arrested for possessing marijuana. This argument ignores the fact that offenses under Article 221 of the Penal Law were repealed effective March 31, 2021. See L.2021, c. 92, § 15. Moreover, Penal Law § 222.05 (1) specifically provides that it is lawful for a person over twenty-one years of age to possess up to three ounces of cannabis.[FN2]
 The record contained no evidence nor even an implication that the defendant possessed more than three ounces of cannabis.
It is beyond cavil that "[a] temporary roadside detention pursuant to a routine traffic stop is not custodial within the meaning of Miranda v. Arizona, [citations omitted]". People v Mathis, 136 AD2d 746 [2d Dept 1988],
Both counsels rely upon Berkemer v McCarty, 468 US 420 [1984]. Berkemer hold that a person being detained pursuant to a traffic stop need not be read his Miranda warnings prior to questioning, however, "the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Id. at 440.
The Court finds that the defendant was in custody for Miranda purposes when Officer Sudol told her that he was going to place her in handcuffs. 
"It is well settled that the burden of proof as to the voluntariness of the defendant's alleged statement is on the People. The Court must find voluntariness beyond a reasonable doubt [*4]before the alleged statement can be submitted to the jury. See People v. Huntley, 15 NY2d 72 (1965)." People v. McGarry, 21 Misc 3d 1104 (Dist. Ct. Nassau 2008).
The People have established. Beyond a reasonable doubt, that Defendant's statements made prior to her being placed in custody, including the statement that she had smoked cannabis one hour prior to the vehicle stop, were made voluntarily and are, therefore, admissible.
Defendant urges that the officer lacked probable cause for the arrest based, in part, on Defendant's passage of four of the six field sobriety tests. The defendant's successful completion of some field sobriety tests does not necessarily negate the probable cause arising from her failure of other tests as well as observations of the officer.
"Reasonable cause to believe that a person has committed an offense" [commonly referred to as probable cause] exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay.
CPL 70.10
A probable cause determination is based on "the totality of the circumstances" (People v. Mojica, 62 AD3d 100, 114, 874 N.Y.S.2d 195 [2009], lv. denied 12 NY3d 856, 881 N.Y.S.2d 668, 909 N.E.2d 591 [2009] ) and "need not always be premised upon the performance of field sobriety tests or any specific number of such tests" (People v. Kowalski, 291 AD2d at 670—671, 738 N.Y.S.2d 427).
People v Fenger, 68 AD3d 1441 [3d Dept 2009].
In the instant matter, probable cause was supported by the failure of two field sobriety tests, defendant's blood shot/glassy eyes, odor of burning marijuana [FN3]
, and defendant's admissible statement that she had smoked cannabis an hour before the stop.
Upon arrival at Garnet, Defendant was read her DWI/DWAI chemical test refusal warning (without modification) and Miranda warning from the same sheet of paper. For the chemical test portion, she circled "YES" agreeing to take the chemical test. On the Miranda portion, she circled answers indicating that she understood the rights and was willing to speak to officers. Defense argues that the form used did not explicitly establish a waiver of her right to counsel, and, accordingly, the waiver was defective. It is noteworthy that there was no testimony that defendant ever asked for an attorney or was otherwise coerced into this waiver. 
A criminal suspect does not have to explicitly waive her right to an attorney. After receiving a Miranda warning, if a suspect voluntarily, knowingly, and intelligently agrees to speak with officers, it can be considered a waiver of her rights. People v Fowler, 25 Misc 3d 1222(A) (Sup. Ct. Kings 2009), People v. Garcia, 66 Misc 3d 1215(A) (Sup. Ct. Kings 2020). If the right to counsel or the right to remain silent is invoked at any point during questioning, further interrogation must cease. Fowler, supra. 
There was no testimony that the defendant ever asserted her right to remain silent or her right to an attorney. The testimony and the Miranda card bearing Defendant's circled answers and signature establish that the defendant knowingly, voluntarily, and intelligently waived her right to remain silent as well as her right to counsel. By circling the word "Yes" twice, she indicated that she both understood these rights and agreed to speak to officers. 
Defendant's argument that the officer should have explained to her that signing the form containing both the chemical test refusal warning and Miranda warning was agreeing to take a chemical test and waive her Miranda rights is without merit. The meaning of placing one's signature below the warnings where the defendant circled "yes" once for agreeing to take the chemical test and twice in response to the Miranda questions is obvious.
Defendant further argues that Officer Sudol should have advised the defendant that she had a right to refuse the chemical test. This argument is without merit. A person is deemed to have given consent to a chemical test when directed to do so by a police officer when there exists reasonable grounds to believe that such person operated a motor vehicle in violation of Vehicle and Traffic Law 1192 within two hours of defendant's arrest for same. See Vehicle and Traffic Law 1194(2)(a).
[O]perators of motor vehicles in New York are deemed to have issued consent to chemical testing under Vehicle and Traffic Law § 1194(2)(a). The statute is designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders **1102 authorizing blood tests (see L. 1953, ch. 854; People v. Ward, 307 NY at 77, 120 N.E.2d 211). Section 1194 "grants a motorist a qualified right to decline to voluntarily take a chemical test" after being ***673 warned that a refusal "will result in the immediate suspension and ultimate revocation of the motorist's driver's license for one year," along with evidence of the refusal being admissible at any subsequent criminal trial (People v. Smith, 18 NY3d at 548, 942 N.Y.S.2d 426, 965 N.E.2d 928).
People v. Washinton, 23 NY3d 228 (2014).
There is no obligation for the officer to advise the defendant of this "qualified right to decline", but, rather, only an obligation to warn a defendant who refuses to take a chemical test of the consequences of his or her refusal.
CONCLUSIONS OF LAW:
PROBABLE CAUSE TO INITIATE TRAFFIC STOP:
The Court finds that there was probable cause to pull the vehicle driven by the defendant over based upon Officer Sudol's observation of the defendant operating the vehicle without wearing a shoulder harness.
[*5]STATEMENTS:
The Court finds that the People have established beyond a reasonable doubt that Defendant's pre-arrest statements, including the statement that she had used cannabis approximately one hour prior to the vehicle stop, are admissible at trial.
No statement responsive to questioning from the time Defendant was in custody (advised that she would be placed in handcuffs) to the time defendant waived her Miranda rights are admissible. None were presented at the hearing, but to the extent that any statements were made during this time period, they will not be admitted at the time of trial.
The Court finds that the People have established beyond a reasonable doubt that Defendant knowingly, voluntarily, and intelligently waived her Miranda rights in the hospital. Statements made after she waived her Miranda rights, including the statement that she was a habitual marijuana smoker and that the test would come back positive "irregardless [sic]", are admissible.
PROBABLE CAUSE TO ARREST THE DEFENDANT:
The Court finds that there was probable cause to arrest the defendant for driving while ability impaired by drugs based upon Officer Sudol's observation of defendants glassy/blood shot eyes with pinpoint pupils, very strong odor of marijuana, Defendant's statement that she used cannabis one hour prior to the vehicle stop, and Defendant's failure of the Modified Romberg test and the Lack of Convergence test. Based upon the totality of the circumstances, Defendant's passing four other field sobriety tests did not vitiate this probable cause.
COLLECTION OF BLOOD FOR CHEMICAL TEST:
The Court finds that the defendant consented to the collection of her blood for a chemical test.
The Court has considered the remaining arguments to suppress evidence and finds them to be either unsupported by the record, without a basis in law, or both, and therefore without merit.
Dated: April 3, 2024
Pine Bush, New York
HON. MARK L. SCHUH
Town Justice

Footnotes

Footnote 1:Miranda v Ariz. (384 US 436 [1966])

Footnote 2:The defendant was over the age of twenty-one at the time of the incident.

Footnote 3:While, in general, "no finding or determination of reasonable cause to believe a crime has been committed shall be based solely" upon the odor of cannabis and/or burning cannabis (see Penal Law § 222.05 [3]), the general rule does not apply to the investigation of certain offenses, including driving while ability impaired by drugs in violation of Vehicle and Traffic Law 1192 (4), as charged in the instant matter. See Penal Law 222.05 (4).